**HMH PUBLISHING CO., Inc., an Illinois Corporation**

v.

**Robert GARRETT and Metro Holovachka.**

**Civ. No. 2146.**

United States District Court
N. D. Indiana, Hammond Division.
April 16, 1957.

Friedman, Zoline & Rosenfield, Chicago, Ill., Roth, Wechsler & Dreyfus, Gary, Ind., for plaintiff.

George Cohan, Robert J. Addison, Gary, Ind., for defendants.

SWYGERT, Chief Judge.

The plaintiff HMH Publishing Co., Inc., is an Illinois Corporation. The de-

fendant Metro Holovachka is the Prosecuting Attorney for Lake County, Indiana, and defendant Robert Garrett is his Deputy for the City Court of Gary, Indiana. This is a suit for injunctive relief and damages. The defendants filed a motion to dismiss the complaint for failure to state a claim and the plaintiff filed a motion for a preliminary injunction. Both motions were heard, at which time evidence was submitted on the motion for a preliminary injunction.

The HMH Publishing Co., Inc. publishes a monthly magazine known as *Playboy*. The publication is circulated nationally through the mails and by magazine distributors and dealers. The K and H News Service, located in Gary and operated by one L. L. Henderson, distributes the magazine in and about Lake County, Indiana.

On December 3, 1956, Henderson was convicted in the Gary City Court of violating the Indiana Pernicious Literature Statute, Burns' Indiana Stat.Anno. § 10–2805, (1956 Repl.), for distributing an edition of *Modern Man* magazine and was fined. Immediately thereafter the attorney who represented Henderson requested of Deputy Prosecutor Garrett a list of magazines being distributed by the K and H News Service which he, Garrett, considered to be in violation of the pernicious literature statute. On December 4, 1956, Garrett in his capacity as deputy prosecutor directed a letter to Henderson's attorney which read in part as follows:

"Pursuant to our conversation relative to the matter of pernicious literature, I have noted the magazines currently displayed in the Gary Bus Station and consider them to be in violation of the pernicious literature statute.

\* \* \* \* \* \*

(Then follows a list of twenty-four magazines, including *Playboy*, and their publishers)

"For the benefit of your client perhaps you might forward to him this list."

Immediately upon receipt of the letter Henderson ceased distributing *Playboy*. He stated that he took this action because he did not wish to be prosecuted. He so informed the plaintiff by letter. Subsequently the plaintiff instituted this action.

The Indiana Pernicious Literature Statute is a penal statute which proscribes the sale or circulation of any book or periodical "the chief feature or characteristic of which is the record of commission of crime \* \* \* or pictures of criminals, desperadoes or of men or women in lewd and unbecoming positions or improper dress \* \* \*."

The plaintiff has not raised any question of the constitutionality of this statute or the authority of a prosecuting attorney to prosecute violations of the statute. Indeed, it is his duty to prosecute such violations. Furthermore, this case does not involve the question whether, as a matter of fact, any issue of *Playboy* magazine comes within the scope of the statute. No determination of that question is made and the parties have acknowledged tacitly, at least, that such a determination is not relevant to the question that is presented for decision.

■ The deputy prosecuting attorney's action in furnishing a list of magazines to Henderson's attorney is not authorized by the pernicious literature statute or by any other law of Indiana. It constituted an informal method of law enforcement which is clearly beyond the scope of any authority given the prosecuting attorney. But this factor, in itself, does not entitle the plaintiff to the injunctive relief which it seeks. Relief can be granted only if this informal and unauthorized action of the prosecuting attorney violated the Constitutional rights of the plaintiff.

The practical effect of the deputy prosecutor's action in furnishing the list of magazines to Henderson's attorney has been to place a ban upon the future distribution of *Playboy* by K and H News Service. This is demonstrated by the

letter written to the plaintiff by Henderson. It reads as follows:

"Received notice from the Prosecuting Attorney of Lake County, Indiana that the following magazines are banned in Gary and are to be taken off sale immediately.

"Inasmuch as I was arrested for circulating three other magazines and fined $100.00 and costs, I do not want to infuriate the local officers by leaving same on sale.

"We are pulling these magazines off sale. Advise of their disposal. Should you have any different ideas about this, would appreciate you letting us know at once." * * * (Then follows a list of magazines, including Playboy.)

The prosecutor's action in issuing a list of magazines that he considered to be pernicious was accompanied by an implied threat of prosecution. His action amounted to censorship, and it was effective. The blacklisted magazines were immediately withdrawn from sale. Thus, the prosecutor brought about a "previous restraint" of the circulation of the magazine published by the plaintiff.

■ A previous restraint of the publication or circulation of printed matter is inconsistent with the American conception of the liberty of the press, Near v. State of Minnesota ex rel. Olson, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357. In Grosjean v. American Press Co., 1936, 297 U.S. 233, 249, 56 S.Ct. 444, 449, 80 L.Ed. 660, the Supreme Court said: "* * * [T]he First Amendment * * * was meant to preclude the national government, and by the * * * Fourteenth Amendment to preclude the states, from adopting any form of previous restraint upon printed publications, or their circulation * * *". However, it was said in the Near case that the protection against previous restraints is not absolutely unlimited and that a limitation may be recognized in exceptional cases. 283 U.S. 716, 51 S.Ct. 631.

■ From this it might be argued that because of the alleged nature of Playboy magazine, the prosecutor's action falls within an exception suggested by the Supreme Court. But it seems reasonable to think that if any previous restraint, e.g. advance censorship of pernicious literature, should be held to come within an exception, it, nevertheless, would have to meet the requirements of procedural due process guaranteed by the Fourteenth Amendment. Cf. Brown v. Kingsley Books, 1 N.Y.2d 177, 134 N.E.2d 461, affirmed 77 S.Ct. 1325.

In the instant case the plaintiff's right to have its magazine circulated and sold has been denied. It has not been afforded a fair hearing before an impartial tribunal in a determination that its magazine comes within the ban of the pernicious literature statute. Rather, the determination took the form of a prejudgment by the prosecutor without the plaintiff being given an opportunity to demonstrate, if it could, that its magazine does not come within the proscription of the statute. What statutory standards or evidentiary proof the prosecutor used in making his decision are unknown. His decision resulted in a fiat which was contrary to the plaintiff's right to the safeguards of the Due Process Clause of the Fourteenth Amendment.

■ It is contended that the plaintiff is estopped from complaining of the prosecutor's action because Henderson, through his attorney, invited the deputy prosecutor to furnish a list of magazines which was considered violative of the statute. This argument is unsound for Henderson was acting in no way as the agent of the plaintiff. Henderson's interests in obtaining a list from Garrett were for the most part contrary to those of the plaintiff.

■ Upon the motion to dismiss the defendants raise the defense that as judicial officers they are completely immune from suit while acting in their official capacities. The immunity of a prosecutor as a judicial officer from suit, how-

ever, does not extend to injunctive relief where it is clearly apparent he is acting beyond the scope of his authority and in deprivation of the Constitutional rights of others. New American Library v. Allen, D.C.N.D.Ohio 1953, 114 F.Supp. 823; Dearborn Pub. Co. v. Fitzgerald, D.C. N.D.Ohio 1921, 271 F. 479.

█ Jurisdiction of this suit lies primarily in 28 U.S.C. § 1343, which provides in pertinent part that "district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person * * * To redress the deprivation, under color of any State law, * * * of any right, privilege or immunity secured by the Constitution of the United States * * *." It is not in dispute that the defendants' actions under inquiry here were taken under color of state law. Moreover, it cannot be doubted that their actions involved "state action" within the meaning of the Fourteenth Amendment. "Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, * * * violates the constitutional inhibition and as he acts in the name and for the State and is clothed with State's power, his act is that of the State." Ex parte State of Virginia, 1879, 100 U.S. 339, 347, 25 L.Ed. 676.

For the foregoing reasons the defendants' motion to dismiss is denied; and it is held that their actions in effecting a suppression of the magazine published by the plaintiff should be enjoined.

It seems hardly necessary to point out that the enjoinder should not be construed as an interference with any prosecutions by the Prosecuting Attorney or his deputies of violations of the Indiana Pernicious Literature Statute.

Counsel are directed to submit a form of decree restraining the defendants from continuing their conduct which has been found to be in violation of the plaintiff's Constitutional rights.