MAGTAB PUBLISHING CORPORATION
et al.
v.
W. L. HOWARD and James C. Kelly, Jr.

HMH PUBLISHING COMPANY, Inc.
v.
W. L. HOWARD and James C. Kelly, Jr.

PICTURES MAGAZINES, INC., et al.
v.
W. L. HOWARD and James C. Kelly, Jr.

BANNER MAGAZINES, INC.
v.
W. L. HOWARD and James C. Kelly, Jr.

DELL PUBLISHING COMPANY, Inc.
v.
W. L. HOWARD and James C. Kelly, Jr.

GREENLEAF PUBLISHING COMPANY
v.
W. L. HOWARD and James C. Kelly, Jr.
Civ. A. Nos. 7222–7227.

United States District Court
W. D. Louisiana,
Monroe Division.

Jan. 9, 1959.

Thomas W. Davenport, Monroe, La., for plaintiffs.

Haynes L. Harkey, Jr., Hayes, Harkey & Smith, Monroe, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This is another of the many controversies arising from the well-intentioned efforts of local governmental authorities to cleanse the newsstands of morally objectionable magazines so as to protect young people from exposure to obscene, indecent, immoral, filthy, lewd, sexually indecent, or lascivious influences. As is almost always the case, the actions of those so worthily motivated have evoked charges here, from the publishers of the

magazines under attack, that their rights under the First Amendment—freedom of the press—and the Fourteenth Amendment—to due process of law—have been violated by a "previous restraint".

These identical actions, brought by the publishers of twelve magazines[1], are for preliminary injunctions against such previous restraint—the unilateral administrative determination by defendants, the Mayor and Chief of Police of Monroe, Louisiana, in advance and without hearing of any kind, that certain issues of complainants' magazines are in violation of Monroe's "Obscenity" Ordinance,[2] with non-prosecutive censorial action allegedly having been taken to suppress them. The suits also claim damages in the sum of $25,000 in each case for defendants' purportedly wrongful conduct.

Upon application, and having noted plaintiffs' sworn averments that irreparable injury was about to be done to their property rights, we issued temporary restraining orders in each case, ordering defendants to cease and desist from their allegedly unlawful conduct, until a hearing could be had upon the merits of the applications for injunctions. By agreement of counsel, these restraining orders were continued in force to the date of the hearing, and thereafter while the matter was held under advisement.

Rules *nisi* were issued, the cases were consolidated for all purposes, and trial without jury was held on November 24th, 1958. Motions to dismiss, filed in each case, were referred to the merits. After study of the record and briefs, we now have arrived at our findings of fact, as to which there is no dispute, and conclusions of law as follows:

Not long prior to October 20th, 1958, (the exact dates not being shown by the record), the Mayor of Monroe, having received numerous complaints from citizens, employed someone to purchase from newsstands in the City any magazines deemed to be in violation of the City's Obscenity Ordinance. Some forty or fifty of these thus were bought and delivered to him. After examining them, he called in an informal advisory committee of ministers, and together they concluded that some fifteen of the publications were obscene.

On October 20th, Joe T. Murray, owner of Red River News Company, Inc., which distributes about 98% of all magazines offered for sale in Monroe, together with most or all of the retail dealers, were invited to a meeting at the Mayor's office. Also present were the Chief of Police and some or all of the ministers.

The Mayor opened the meeting by telling them its purpose; the Ordinance was read aloud; and they were advised that

| | | |
|---|---|---|
| 1. Gala | Guy | Playboy |
| Scope | Modern Romances | Man to Man |
| Dude | Brigitte | Mr. |
| The Lowdown | Rogue | Sir |

2. Section 10-44 of the City of Monroe Code:

"It shall be unlawful to commit an act of obscenity.

"The crime of obscenity is the intentional:

"(1) Exposure of one's person in a public place in such manner that any part of a sex organ may be seen by another person; or

"(2) Production, sale, exhibition, possession with intention to display, exhibit, or sell, or the advertisement of, any obscene, lewd, lascivious, filthy, or sexually indecent print, picture, motion picture, written composition, model, instrument, contrivance or thing of whatsoever description; or

"(3) Performance by any person, or the showing or display of any picture or motion picture, in any public place or in any public manner, of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people."

the twelve magazines here involved, plus three others not the subject of these suits, were considered to be in violation of the Ordinance. It was explained to those present that the Mayor and his advisory committee recognized the distributor and retailers to be upright, reputable businessmen, who probably did not realize they were violating the law. For that reason, they were told that they would not be prosecuted, provided the objectionable publications were removed from their stands by November 1st. Some of the retailers requested that they be furnished with a list of the magazines, so, on October 23rd, the Mayor and Chief of Police had uniformed policemen to serve upon the retailers identical copies of the following:

*"Notice!    Notice!    Notice!*

*Concerning The Sale or Distribution of Lewd or Obscene Literature*

"In compliance to Section 10–44 of the City of Monroe Code titled 'Obscenity' passed under Ordinance 3004 November 29th, 1952, entered July 2nd, 1958; effective July 10th, 1958, making it unlawful to commit an act of obscenity in the production, sale, exhibition, possession with the intent to display, exhibit, or sell, or the advertisement of, any obscene, lewd, lascivious, filthy, or sexually indecent print, picture, motion picture, written composition, model, instrument, contrivance or thing of whatsoever description;

"The Community Literature Improvement Committee, composed of a large group of citizens of the City of Monroe, having examined many of such magazines and, after careful consideration, has judged to the best interest of the community that the following list of magazines shall be removed from all places of business that handle the sale of such literature or any place of business distributing such literature:

"True Confessions    Mr.
Modern Romances    Dude
Police Dragnet    Guy
Sir!    Gala
Good Photography    Rogue
Scope    The Lowdown
Playboy    Brigitte

Man To Man

"(Signed) Rabbi Jack Lantz
"Rabbi Jack Lantz, Chairman
"Community Literature Improvement Committee

"(Signed) Mike John, Jr.
"Mike John, Jr., Co-Chairman

"(Signed) W. L. Howard
"W. L. Howard, Mayor City of Monroe, Louisiana
"JL:MJ:WLH/mw"

Following this action, these suits were filed on October 31st, 1958, one day prior to the effective date of the notice. Meantime, some of the retail dealers had removed the proscribed publications from their stands; and following the issuance of our restraining orders, most, if not all, of them again were placed on sale.

Plaintiffs do not challenge the constitutionality of the Ordinance. They do not argue that its language is void for vagueness, nor do they contend that it cannot be readily understood, conceding that it conveys a definite warning as to the conduct prohibited. They admit that obscenity is not within the protection of the First or Fourteenth Amendments; and, at the trial, their counsel stated that he did not dispute that the publications here involved were obscene, within the meaning of the Ordinance.

Plaintiffs do urge, however, that defendants are public officials whose powers are strictly limited by statute and that no statute gives them the right to judge the merits of publications, nor the right to delegate it to others on a committee to do so; that no statute gives them the right to ban publications by the

issuance of an edict or letter in which they require the removal of certain magazines from places of business handling such literature. They further contend that the unilateral action of defendants here was in violation of the First and Fourteenth Amendments, depriving plaintiffs of freedom of the press and of property without due process of law, and contravening their civil rights, in violation of 42 U.S.C.A. § 1983; that courts will issue injunctive relief where valuable property rights are faced with damage and destruction, threatened or resulting from arbitrary action by public officials acting without due process of law. They urge that the sole question here involved is one of law, namely, whether defendants' conduct, as described, amounts to an unauthorized prior restraint.[3]

For their part, defendants contend that obscenity is not within the protection of the First Amendment to the Constitution, guaranteeing freedom of speech and press, and, therefore, may be proscribed;[4] that statutes and ordinances which convey sufficiently definite warning as to the conduct which is proscribed are not unconstitutional because of vagueness;[5] that statutes and ordinances proscribing obscene, lewd, lascivious, filthy, and sexually indecent publications are readily understood and convey definite warning as to the conduct prohibited;[6] and that Section 10-44 of the City of Monroe Code proscribing the sale or exhibition of any "obscene, lewd, lascivious, filthy or sexually indecent" matter, is not vague and indefinite and is not, therefore, an unconstitutional invasion of the freedoms of speech and press.[7] Defendants further contend that only in exceptional circumstances may the equity powers of a Federal Court be invoked to interfere with the enforcement, or threatened enforcement, of a criminal statute or ordinance, even though unconstitutional;[8] that no citizen is immune from criminal prosecution, or the threat thereof, in good faith, and imminence of such prosecution, even though unauthorized, is not alone ground for relief in equity by way of injunction.[9]

3. Citing New American Library of World Literature, Inc. v. Allen, D.C., 114 F. Supp. 823; 28 Am.Jur. 373, Section 185; Id. 421, Section 238; 43 C.J.S. Injunctions § 111, p. 634; Dearborn Publishing Co. v. Fitzgerald, D.C., 271 F. 479, 482; American Mercury, Inc. v. Chase, D.C., 13 F.2d 224; HMH Publishing Company, Inc. v. Garrett, D.C., 151 F. Supp. 903; Bantam Books, Inc. v. Melko, 25 N.J.Super. 292, 96 A.2d 47; Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; De Jonge v. State of Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; Jones v. City of Opelika, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290; Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313; Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430; Near v. State of Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357.

4. Citing Chaplinsky v. State of New Hampshire, 1942, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031; Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Alberts v. State of California, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Sunshine Book

Company v. Summerfield, 1957, 101 U.S. App.D.C. 358, 249 F.2d 114.

5. Citing Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Alberts v. State of California, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

6. Citing Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Alberts v. State of California, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

7. Citing Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Alberts v. State of California, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; State of Louisiana v. Roth, 1954, 226 La. 1, 74 So.2d 392.

8. Citing Spielman Motor Sales Co. v. Dodge, 1935, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Beal v. Missouri Pacific Railroad Corp., 1941, 312 U.S. 45, 61 S. Ct. 418, 85 L.Ed. 577; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L. Ed. 1416; Hallmark Productions, Inc. v. Mosley, 8 Cir., 1951, 190 F.2d 904; City of Miami v. Sutton, 5 Cir., 1950, 181 F.2d 644; Galfas v. City of Atlanta, 5 Cir., 1952, 193 F.2d 931.

9. Citing Beal v. Missouri Pacific Railroad Corp., 1941, 312 U.S. 45, 61 S.Ct. 418, 85

Against this background of recognized constitutional principles, defendants chiefly urge that the constitutional protection against previous restraint is not absolutely unlimited, the most notable exception being in cases of enforcement, or threatened enforcement, of statutes and ordinances proscribing obscene matter, Near v. State of Minnesota, 1931, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357; Kingsley Books, Inc. v. Brown, 1957, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed. 2d 1469. Consequently, their ultimate contention is that the threatened enforcement of a City ordinance proscribing the sale of any "obscene, lewd, lascivious, filthy, or sexually indecent" matter is not a previous restraint prohibited by the freedom of speech and press clauses of the Constitution.

We find it unnecessary to engage in extended discussion of the constitutional questions thus presented, because the undisputed facts in this record make it perfectly clear that the injunctive relief here sought should not be granted:

At the meeting held on October 20th, 1958, Joe T. Murray obtained the impression, from a statement by one of the ministers present, that prosecutions were threatened against any one handling both current and future issues of the publications involved, without regard to subject matter or content, and he so testified. It is obvious, however, that he was mistaken in this, for Mayor Howard made it clear that his first threat or warning was the only one which he would issue and that, thereafter, his action would be to prosecute or not, depending upon whether these magazines, or any others, contained obscene matter in violation of the Ordinance.[10]

---

L.Ed. 577; Hallmark Productions v. Mosley, 8 Cir., 1951, 190 F.2d 904; City of Miami v. Sutton, 5 Cir., 1950, 181 F. 2d 644.

10. "Q. In your Answer, as filed in the present suit, in paragraph 9 and paragraph 12, it is set forth that the Complaint arose as to the banning of future issues of the magazines, and as set forth in paragraph 9 of your Answer:

" 'That all present were advised in answer to that question that if future issues of said magazines contained the same or similar obscene, lewd, lascivious, filthy or sexually indecent material, the City would have no alternative but to prosecute those who offered those magazines for sale.'

"Is that substantially what was said and done? A. That is correct, sir.

"Q. And paragraph 12, which is a repetition of your position:

" 'That if future issues of said magazines contained the same or similar obscene, lewd, lascivious, filthy or sexually indecent material and if such future issues are displayed or offered for sale that such persons would be liable for prosecution.' A. That is correct.

"Q. That is substantially what was said? A. That is correct.

"Q. Suppose that a new issue of any one of the fifteen magazines had been delivered to the stands on the following day, what would have been your action as to the removal of that magazine? A. No action would have been taken unless it contained material similar to that contained in the current issue.

"Q. Was it your intention to conduct a weekly, bi-weekly, monthly or bi-monthly censorship in Monroe? A. It was my intention to check the newsstands as to the type of material they sell periodically.

"Q. That would require a constant check, Mr. Howard? A. That is correct.

"Q. And it is your intention to conduct the self-imposed censorship in Monroe? A. Not as censorship, but continue to examine the magazines to see what material was issued.

"Q. Was it your intention to issue another notice, edict, or fiat as to whether or not that magazine could be handled on the newsstands? A. No, sir. The intention was to issue a warrant. We felt we had been more than fair in notifying the dealers and distributors as to the type of material which did not comply with the ordinance.

"Q. It was your intention thereafter to make the investigation which you felt was necessary and take what you believed to be appropriate action? A. Certainly I would have to take such action to make up my mind as to whether or not I wanted to issue a warrant.

"Q. The question is whether or not it was your intention to issue additional lists to inform your friends in business, as to whom you said had no knowledge of what was being sold on the newsstands,

■■ Matters standing thus, and the then current issues of these magazines now having been replaced by later issues, if defendants' conduct did constitute an unauthorized prior restraint—which we do not decide—it is plain that defendants' future action will be to prosecute, not to threaten. This they have a perfect right to do, if they choose, and this Court will not enjoin such action because, in the first place, such prosecutions will be, not against plaintiffs—who are not here to be proceeded against criminally—but against the distributor or dealers; and, in the second place, because those who will be thus prosecuted can present all of their defenses, constitutional, factual or otherwise, before the State Courts, with ultimate recourse to the United States Supreme Court.[11] A court of equity, especially a Federal Court dealing with State action, statutes

or ordinances, will not issue an injunction against an alleged illegal activity where such activity has been voluntarily stopped and there is a *bona fide* intention not to resume it.[12]

Accordingly, we feel we would be justified in finally dismissing the prayers for injunctions at this time. Since, however, we must retain jurisdiction of these cases in order to dispose of the damage claims at a later date, our action will be now to recall and rescind the temporary restraining orders, issued herein on October 31st, 1958, and to deny the applications for preliminary injunctions; with leave to plaintiffs to file supplemental complaints, as to any possible further prior restraints, if such are exerted. Meantime, we shall retain jurisdiction for all purposes. It is so ordered.

A proper decree should be presented.

that continued issues were banned and prohibited, and rendered them liable to prosecution? A. No, sir, I had no intention of issuing future lists.

"Q. *It was, thereafter, your intention not to give warning to any dealer but to proceed by criminal prosecution?* A. *That's right. The information we had was that the dealers, generally, did not know what was being sold on their newsstand. In fact, the distributor, did not realize what he was selling.*

"*We felt that this one effort to warn them would be sufficient, they being interested in the welfare of the community themselves would take action of their own and automatically eliminate those things which would be objectional* [objectionable].'' (Emphasis supplied.)

11. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Walton v. City of Atlanta, 5 Cir., 181 F.2d 693; Whisler v. City of West Plains, 8 Cir., 137 F.2d 938; Galfas v. City of Atlanta, 5 Cir., 193 F.2d 931; Fuqua v. United Steelworkers of America, 6 Cir., 253 F.2d 594; City of Miami v. Sutton, 5 Cir., 181 F.2d 644, 649; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402; Fenner v. Boykin,

271 U.S. 240, 243–244, 46 S.Ct. 492, 493, 70 L.Ed. 927; Audiocasting, Inc. v. State of Louisiana, D.C., 143 F.Supp. 922.

12. Walling v. Youngerman-Reynolds Hardwood Co., Inc., 325 U.S. 419, 421, 65 S.Ct. 1242, 1243, 89 L.Ed. 1705:
"While 'voluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power,' Walling v. Helmerich & Payne, 323 U.S. 37, 43, 65 S.Ct. 11, 14, 89 L.Ed. 29, it may justify a court's refusal to enjoin future activity of this nature when it is combined with a bona fide intention to comply with the law and not to resume the wrongful acts."
See also to the same effect United States v. United States Steel Corp., 251 U.S. 417, 445, 40 S.Ct. 293, 64 L.Ed. 343; Tilbury v. Rogers, D.C., 123 F.Supp. 109, 114, affirmed Tilbury v. Mitchell, 5 Cir., 220 F.2d 757, (per curiam); United States v. Standard Oil Co., D.C., 78 F.Supp. 850, affirmed 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371; Champion Spark Plug Co. v. Reich, 8 Cir., 121 F.2d 769, certiorari denied 314 U.S. 669, 62 S.Ct. 130, 86 L.Ed. 535; Gray v. University of Tennessee, 342 U.S. 517, 72 S.Ct. 432, 96 L.Ed. 540; Brown v. Board of Trustees, 5 Cir., 187 F.2d 20.