**STATE CINEMA OF PITTSFIELD, INC.,
Petitioner, Appellant,**

v.

**Matthew J. RYAN, Jr., Esq., William J.
Flynn, Esq., and Milo Brown,
Respondents, Appellees.**

**No. 7449.**

United States Court of Appeals,
First Circuit.

Heard March 2, 1970.
Decided March 27, 1970.

---

threatening arrest and prosecution or from seizing or suppressing the film for plaintiff's failure to comply with the order. By agreement of the parties, the district court heard the request for a temporary restraining order as though it were an application for a permanent injunction and as though defendants had moved to dismiss the complaint. The court dismissed the complaint for failure to state a cause of action.[3] For the reasons hereinafter set forth, we affirm.

It is important at the outset to note that plaintiff does not seek to enjoin arrest or prosecution *per se*, that it does not attack the relevant state statute as unconstitutional, that it does not question defendants' good faith in taking the actions complained of,[4] and that it does not seek to assert any claim on behalf of the public interest. This case therefore does not even approach the rigorous requirements of "special circumstances" discussed in Cameron v. Johnson, 390 U.S. 611, 618–619, 88 S.Ct. 1335, 20 L.Ed. 2d 182 (1968). The sole basis of this action is plaintiff's contention that the "threat" or "warning" amounted to an unconstitutional prior restraint under the doctrine of Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L. Ed.2d 584 (1963). We have concluded that that case is inapposite and not controlling.

*Bantam Books* held unconstitutional the creation and practice of a state commission which passed on the acceptability of literature, publicly denounced as objectionable materials which failed to meet with its approval, and threatened distributors of the materials with prosecution—though the commission had no prosecutorial powers.

At least two critical distinctions are apparent between the scheme in *Bantam Books* and the situation at bar. It is

David H. Lamson, Boston, Mass., for petitioner, appellant.

Lawrence P. Cohen, Asst. Atty. Gen., with whom Robert H. Quinn, Atty., Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief Criminal Division, and Matthew J. Ryan, Jr., Dist. Atty., were on brief, for respondents, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

Plaintiff, a motion picture exhibitor, was ordered to cease showing the film "Vixen" by a state assistant district attorney and a state police officer on pain of seizure of the print and arrest of its agents,[1] presumably for violation of the Massachusetts obscenity statute.[2] This action was brought to enjoin the district attorney and state police officer from

1. Plaintiff complied with the order, allegedly to avoid prosecution.

2. Mass.Gen.Laws Ann. ch. 272, § 28A (1959).

3. State Cinema of Pittsfield, Inc. v. Ryan, 303 F.Supp. 579 (D.Mass.1969).

4. More strictly, perhaps, plaintiff asserts legal bad faith with respect to the procedure itself, but does not claim subjective bad faith, viz., that the defendants do not believe the picture is obscene, or have misrepresented their intent to prosecute.

first evident that the commission—through the public nature of its pronouncements—arrogated to itself the role of public censor. The public was told, in effect, what it should and should not read. The injury to both publishers and distributors of the materials was complete when the commission's announcements were made. No judicial action, offensive or defensive, was likely to remedy the damage done to the plaintiff's sales in the event the material was eventually found not to be obscene.[5]

The second important distinction is that the commission's threats of prosecution were addressed to distributors of printed matter rather than to the publishers, which were beyond the reach of state process. Distributors frequently carry large numbers of publications and the effect on their profits of dropping a small number is usually small. They are therefore unlikely to risk prosecution to test the legality of particular publications.[6] Hence, by focusing on distributors, the commission in *Bantam Books* was able to secure its objectives without the safeguards of the criminal process by intimidation of those whose interest in resisting was minimal. This left the publisher without legal recourse.

Neither of these objections is present here. Since the prosecutor's warning was made in private, the public was not informed that a public official deemed plaintiff's film objectionable. Hence, plaintiff's sale of tickets could not have been affected had it continued to show the film. Moreover, the warning does not work indirectly on plaintiff to suppress the film while avoiding a judicial test of its obscenity. Plaintiff's rights

do not depend on the willingness of third parties to risk prosecution. It can do so on its own account.[7]

The record in this case shows no more than a good faith attempt by the police and prosecutor to enforce state law, the validity of which has not been called into question. The essence of plaintiff's complaint seems to be that this was done in an informal manner. In our view this is not actionable, at least absent bad faith. *See Bantam Books, supra,* at 71–72, 83 S.Ct. 631; *cf.* O'Toole v. Scafati, 386 F.2d 168, 169, 170 (1st Cir. 1967).

Affirmed.

---

5. It is also important to note that the commission did not limit itself to materials which would be obscene under then-prevailing legal definitions. *Bantam Books, supra,* at 64, 83 S.Ct. 631. Plaintiff here concedes that "Vixen" is at least arguably obscene. Therefore, there is no suggestion that the defendants seek to suppress materials which are clearly protected.

6. *See* American Mercury, Inc. v. Chase, 13 F.2d 224, 225 (D.Mass.1926).

7. This distinction also applies to the other cases relied upon by plaintiff. HMH Pub. Co. v. Garrett, 151 F.Supp. 903 (N.D.Ind.1957); New Am. Library of World Literature, Inc. v. Allen, 114 F. Supp. 823 (N.D.Ohio 1953); American Mercury, *supra* n. 5; Bantam Books, Inc. v. Melko, 25 N.J.Super. 292, 96 A.2d 47 (Ch.1953), mod., 14 N.J. 524, 103 A.2d 256 (1954).