Bergan, J.
In this action maintained by the Corporation Counsel of the City of New York and by the District Attorneys of each of the five counties of the city in pursuance of section 22-a of the Code of Criminal Procedure, an injunction is sought to restrain defendant, a book publisher, from selling and distributing “ Memoirs of a Woman of Pleasure ” by John Cleland, written about 1749, and popularly known as “ Fanny Hill ”.
The statute authorizes such an action as this by the public officials who have been joined as plaintiffs where a book is “ obscene, lewd, lascivious, filthy, indecent or disgusting”. After a trial the court at Special Term dismissed the complaint. The Appellate Division reversed by a divided court and, finding that the book comes ‘ ‘ within the proscription ’ ’ of section 22-a, granted the injunction and other relief sought by plaintiffs in full scope. From the resulting order the publisher appeals here.
The suppression of a book requires not only an expression of judgment by the court that it is so bad, in the view of the Judges, that it is offensive to community standards of decency as the 'Legislature has laid them down, but also that it is so bad that the constitutional freedom to print has been lost because of what the book contains. The history and tradition of our institutions stand against the suppression of books.
Judicial definitions of one sort or another have been fashioned to describe tests by which a book will be suppressed, giving due weight to constitutional considerations; but the experience of the profession demonstrates that definitions are unsafe vehicles in obscenity cases. The nature of the problem may be illustrated by a differential analysis of four significant decisions in this *402 field, in two of which the suppression of the publication was judicially approved; and in two of which the suppression of the publication was annulled on constitutional grounds.
In Roth v. United States (354 U. S. 476 [1957]) a criminal conviction for violating section 1461 of title 18 of the United States Code was sustained. This statute prohibits the mailing of material described almost literally as section 22-a of the New York Code of Criminal Procedure describes material which may be enjoined by action. The accused had mailed matter which Clark, Ch. J., writing for the United States Court of Appeals, described as ‘ ‘ salable pornography” (United States v. Roth, 237 F. 2d 796, 799).
But in Manual Enterprises v. Day (370 U. S. 478 [1962]) the court reversed a determination by the Post Office Department which had barred a shipment of the publisher’s magazines on the ground they were obscene within the definition of section 1461 of title 18 of the United States Code upon a finding, among others, that they were largely made up of photographs of male nudes, composed primarily for homosexuals, without literary merit, and appealing to the prurient interests of sexual deviates.
Some of the nude photographs were captioned “ perfectly proportioned, handsome male models, age 18-26 ”, and the president of the publisher admitted the magazines were planned for homosexuals, ‘‘ designed to appeal to and stimulate their erotic interests” (pp. 527-528).
In People v. Richmond County News (9 N Y 2d 578 [1961]) the court affirmed an order reversing a judgment of conviction for violation, in the sale of a magazine, of section 1141 of the Penal Law, which makes criminal the sale or distribution of material described substantially in the terms of the two statutes which have been referred to.
The ground on which the conviction was reversed here, differing from that stated by the Appellate Division, was that the magazine was not obscene when due consideration was given to constitutional rights. There was in that case, however, among the “ numerous ” pictures of nude or partially nude women many which were “ clearly sexually suggestive ”, one in which a totally nude woman was addressing another totally nude woman in terms suggesting lesbianism. There was detailed and graphic description of sexual intercourse and one suggesting *403 brutality in sexual intercourse. These were cited as “ illustrative of the general content ” of the magazine (pp. 593-594).
In People v. Fritch (13 N Y 2d 119 [1963]), on the other hand, a book, “ Tropic of Cancer ”, was held obscene and an order reversing a conviction under section 1141 of the Penal Law was in turn reversed against the argument there was a resulting impai •’ment of constitutional freedom to print. It was observed that tnere could be found ‘ ‘ a constant repetition of patently offensive words used solely to convey debasing portrayals of natural and unnatural sexual experiences ” (p. 124).
The differential examination of these cases suggests at once the inherent difficulty in reaching consistency in any review of acts of censorship, criminal or administrative, and the large measure of judicial subjectivity inherent in the process.
It is not easy to distinguish the cases on the basis of real differences in the material under scrutiny. Still the decisions are not whimsical and haphazard judicial choices, but resulted in each case from earnestly searching out the significant constitutional issues. In Roth, for example, the discussion in the United States Court of Appeals and in the Supreme Court together reaches close to 30,000 words.
From a comparative study of the decisions the Bar must be able to form an intelligent professional judgment to predict, as well as it can, future judicial action in obscenity cases and advise those who would print books accordingly. And in this field, as in others, it is an essential judicial function to provide a reasonable measure of reckonability.
This may be helped along, perhaps, by placing a burden on the censor to bring himself within an area in which the exercise of his powers is constitutionally permissible and by resolving all doubtful eases in favor of the freedom to print.
When one looks carefully at the record since 1956 of what on constitutional grounds has been allowed to be printed and circulated, and what has been suppressed, “ Fanny Hill ” seems to fall within the area of permissible publications. It is an erotic book, concerned principally with sexual experiences, largely normal, but some abnormal.
It has a slight literary value and it affords some insight into the life and manners of mid-18th Century London. It is unlikely “ Fanny Hill ” can have any adverse effect on the sophisticated *404 values of our century. Some critics, writers, and teachers of stature testified at the trial that the book has merit, and the testimony as a whole showed reasonable differences of opinion as to its value. It does not warrant suppression.
Moreover, we are bound by the decisions of the Supreme Court of the United States on the subject of what is within the range of permissible publication under the freedom of the press provision of the Constitution. This court must respect those decisions and must follow them. The Supreme Court has indicated with growing judicial resolution that New York’s obscenity statute may not constitutionally be invoked to suppress a book of the standard and content of ‘ ‘ Fanny Hill ’ ’.
The decision of this court last year, for example, holding “Tropic of Cancer ” to be obscene and subject to criminal prosecution (People v. Fritch, supra) has been now overruled by Grove Press v. Gerstein (378 U. S. 577) in which the Supreme Court reversed the judgment of the District Court of Appeal of Florida (156 So. 2d 537). Under the Florida obscenity statute the State court had enjoined the sale and distribution of “ Tropic of Cancer ”.
On the same day the Supreme Court reversed another State court decision under the Florida obscenity statute (Tralins v. Gerstein, 378 U. S. 576) which had held “Pleasure Was My Business ” obscene. The State court had enjoined its distribution holding it was condemned by the Florida statute (151 So. 2d 19).
Dealing, as it is described as doing (32 U. S. Law Week 3437), with “ numerous descriptions of abnormal sex acts and indecent conversations supposed to have taken place in a Florida brothel ” we would regard it as being in a class with “ Fanny Hill” and perhaps as going somewhat farther in utilization of objectionable material. If that work could not be restrained by Florida because of the interdiction of the Constitution, New York would quite obviously be left without authority to restrain “ Fanny Hill ”. To similar effect in the area of obscene motion pictures see Jacobellis v. Ohio (378 U. S. 184) also decided June 22, 1964.
It had become increasingly clear in a long line of decisions which foreshadowed those of June 22 that State obscenity statutes would no longer afford a constitutionally sound basis *405 for the suppression of a book of the type of “ Fanny Hill ” (Roth v United States, supra; Kingsley Books v. Brown, 354 U. S. 436; Alberts v. California, 354 U. S. 476; One, Inc., v. Olesen, 355 U. S. 371; Kingsley Pictures Corp. v. Regents, 360 U. S. 684; Smith v. California, 361 U. S. 147, and Manual Enterprises v. Day, supra).
The order should be reversed and the complaint dismissed, without costs.