**Robert DE SALVO, Plaintiff,**

**v.**

**Michael J. CODD, Individually, and as Police Commissioner of the City of New York, et al., Defendants.**

**No. 74 Civ. 2055.**

United States District Court,
S. D. New York.

Dec. 23, 1974.

Kassner & Detsky, New York City, for plaintiff; Herbert S. Kassner, New York City, of counsel.

Richard H. Kuh, Dist. Atty., New York County, New York City, defendant pro se; Allen G. Swan, New York City, of counsel.

Adrian P. Burke, Corp. Counsel, New York City, defendant pro se; Renee Modry, Joseph I. Lauer, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, amicus curiae; Arlene R. Silverman, New York City, of counsel.

Before OAKES, Circuit Judge, and MacMAHON and WARD, District Judges.

ROBERT J. WARD, District Judge:

Plaintiff instituted this civil rights action under 42 U.S.C. § 1983 seeking a declaration that New York's criminal and civil anti-obscenity statutes, New York Penal Law art. 235 McKinney's Consol.Laws, c. 40 ("the criminal statute") [1] and New York Civil Practice Law and Rules § 6330 ("the civil statute"),[2] are unconstitutionally vague

---

1. When this litigation was commenced, New York Penal Law § 235.00(1) defined "obscene" as follows:

    Any material or performance is "obscene" if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience.

    This statute has since been amended and now provides:

    Any material or performance is "obscene" if (a) the average person, applying contemporary community standards, would find that considered as a whole, its predominant appeal is to the prurient interest in sex, and (b) it depicts or describes in a patently offensive manner, actual or simulated: sexual intercourse, sodomy, sexual bestiality, masturbation, sadism, masochism, excretion

    or lewd exhibition of the genitals, and (c) considered as a whole, it lacks serious literary, artistic, political, and scientific value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience.

    Ch. 989, § 1, New York Laws effective Sept. 1, 1974 (McKinney's Session Laws 1974).

2. The supreme court has jurisdiction to enjoin the sale or distribution of obscene prints and articles, as hereinafter specified:

    1. The district attorney of any county, the chief executive officer of any city, town or village or the corporation counsel, or if there be none, the chief legal officer of any city, town, or village, in which a person, firm or corporation publishes, sells or distributes or displays or is about to sell or distribute or display or has in his possession with intent to sell or display or distribute or is about to acquire possession with intent to sell, display or distribute any book, magazine, pamphlet, comic book, story paper, writing, paper, picture,

and overbroad, both on their face and as construed, and that the procedure established by CPLR § 6330 is unconstitutional insofar as it authorizes a total restraint upon the exhibition of a motion picture prior to a final determination of obscenity. He further seeks an injunction against the enforcement of both statutes.

In a memorandum decision filed June 24, 1974, this Court, sitting as a single judge, denied plaintiff's application to convene a three-judge court to determine the constitutionality of Penal Law art. 235 and the procedural aspects of CPLR § 6330, finding that these claims failed to raise a substantial federal question. This three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284 to determine the remaining question raised by plaintiff's complaint—whether the civil statute is so vague and overbroad on its face as to be constitutionally unenforceable.[3]

Plaintiff, the lessee and operator of the Lincoln Art Theater in the borough of Manhattan, has in the past exhibited at his theater sexually oriented films which

> include in varying degrees some or all of the following representations of sexual conduct.
>
> a. Actual portrayal of ultimate sex acts.
>
> b. Actual portrayal of non-ultimate sex acts.
>
> c. Simulated portrayal of ultimate sex acts.
>
> d. Simulated portrayal of non-ultimate sex acts.
>
> e. Any of the above with respect to normal sex acts.

motion picture, drawing, photograph, figure, image or any written or printed matter of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose; or in any other respect defined in section 235.00 of the penal law, may maintain an action for an injunction against such person, firm or corporation in the supreme court to prevent the sale or further sale or the distribution or further distribution or the acquisition, publication or possession within the state of any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, motion picture, drawing, photograph, figure or image or any written or printed matter of an indecent character, herein described or described in section 235.00 of the penal law.

2. The person, firm or corporation sought to be enjoined shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial.

3. In the event that a final order or judgment of injunction be entered in favor of such officer of the city, town or village and against the person, firm or corporation sought to be enjoined, such final order of judgment shall contain a provision directing the person, firm or corporation to surrender to such peace officer as the court may direct or to the sheriff of the county in which the action was brought any of the matter described in paragraph one hereof and such sheriff shall be directed to seize and destroy the same.

4. In any action brought as herein provided such officer of the city, town or village shall not be required to file any undertaking before the issuance of an injunction order provided for in paragraph two hereof, shall not be liable for costs and shall not be liable for damages sustained by reason of the injunction order in cases where judgment is rendered in favor of the person, firm, or corporation sought to be enjoined.

5. Every person, firm or corporation who sells, distributes, or acquires possession with intent to sell or distribute any of the matter described in paragraph one hereof, after the service upon him of a summons and complaint in an action brought by such officer of any county, city, town or village pursuant to this section is chargeable with knowledge of the contents thereof.

6. The court, in its adjudication, may (1) grant the relief sought (2) deny the relief sought or (3) enjoin the sale, further sale, display, distribution, further distribution, acquisition, publication, or possession of the material, to persons under the age of seventeen, upon a finding that the material is of the kind described in paragraph a or b of subdivision one of section 235.21 of the penal law.

3. The single judge court denied plaintiff's motion for temporary injunctive relief finding that success on the merits was unlikely and that the balance of hardships was not decidedly in his favor. (mem. op. p. 6)

f. Any of the above with respect to abnormal sex acts.

g. Any of the above with respect to perverted sex acts.

h. Actual portrayal of masturbation.

i. Simulated portrayal of masturbation.

j. Actual portrayal of excretory functions.

k. Simulated portrayal of excretory functions.

i. Exhibition of the genitals, both male and female, in various poses.

(Complaint ¶ 3)

He alleges that he wishes to continue exhibiting non-obscene films of like character but is inhibited from doing so for fear of coming within the proscriptions of the civil statute. Plaintiff argues that the civil statute violates his constitutional right to exhibit non-obscene films under the First and Fourteenth Amendments because it is vague and overbroad. Specifically, he argues that the civil statute is unconstitutionally vague in light of the standards established in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) in that it does not specifically define those categories of sexual conduct which when portrayed in a patently offensive manner will be labelled obscene and, thereby, constitutionally unprotected and in that it does not define that community with reference to which the predominant appeal and patent offensiveness of the material is to be judged. He argues that the statute is overbroad in that its proscriptions extend beyond that category of expressive material which is defined as obscene by the criminal statute.

### Abstention

A threshold question is whether this Court should abstain from deciding the constitutional issue posed by this controversy and postpone the exercise of its conceded jurisdiction until a construction of the civil statute, in light of Miller, may be obtained from the New York Court of Appeals. In deciding whether to stay its hand, this Court must be mindful that

> [a]bstention is a "judge-made doctrine . . ., first fashioned in 1941 in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, [61 S.Ct. 643, 85 L.Ed. 971], [that] sanctions . . . escape [from immediate decision] only in narrowly limited 'special circumstances,' Propper v. Clark, 337 U.S. 472, 492, [69 S.Ct. 1333, 1334, 93 L.Ed. 1480]," Zwickler v. Koota, 389 U.S. 241, 248, [88 S.Ct. 391, 395, 19 L.Ed.2d 444] (1967), justifying "the delay and expense to which application of the abstention doctrine inevitably gives rise." England v. Louisiana State Board Medical Examiners, 375 U.S. 411, 418, [84 S.Ct. 461, 466, 11 L.Ed.2d 440] (1964). Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

The paradigmatic circumstance in which it may be appropriate for a federal court to invoke the abstention doctrine is when "resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law." Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). However, abstention does not follow automatically from the confrontation with an ambiguity in state law. Rather what is required is a judicious exercise of discretion. The determination that the "special circumstances", requisite for the application of the doctrine, exist can only be made after a balancing of all the relevant factors and competing policies on a case-by-case basis. Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

After considering all the factors, we conclude that this is not a case where abstention would be appropriate. First, we note the importance of the right alleged to be abridged and the impairment of that right which would be attendant upon the delay abstention

involves.[4] When statutes are attacked on their face as abridging free expression, as in the instant case, abstention is inappropriate. Dombrowski v. Pfister, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). No opinion of the New York Court of Appeals construing this statute is imminent, thus distinguishing this case from United Artists Corp. v. Proskin, 363 F.Supp. 406 (N.D.N.Y.1973) and Detco, Inc. v. McCann, 365 F.Supp. 176 (E.D.Wis.1973).

Another factor which persuades us to reach the merits is that we find sufficient guidance as to the construction to be given the statute in the decisions of the New York Court of Appeals [5] to render abstention unwarranted. This is not a case where the challenged statute has never been construed by any state court. Compare Lake Carriers' Assn. v. MacMullan, *supra*; Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). Our view of the construction given the statute by the New York courts, particularly the decision in People v. Heller, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973), cert. denied sub nom., Buckley v. New York, 418 U.S. 944, 94 S.Ct. 3231, 41 L.Ed.2d 1175 (1974), therefore, distinguishes this case from United Artists Corp. v. Harris, 363 F.Supp. 857 (W.D.Okl.1973).

This case is also distinguished from those where abstention has been ordered in that there is no real independent question of state law. Rather, to abstain here, remitting the plaintiff to state court, would be to force him to litigate the *same* claim there. " '[A]ssertion of a federal claim in a federal court [need not] await an attempt to vindicate *the same claim* in a state court.' " Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 858, 28 L.Ed.2d 196 (1971), quoting from McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Compare Askew

v. Hargrave, *supra*; Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

While recognizing that the statute is not without ambiguity, for the reasons noted, this Court, in the exercise of its discretion, will not abstain.

### Overbreadth

It is with reluctance that this Court now mires itself in what has been called "the intractable obscenity problem", Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 704, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968) (Harlan, J., dissenting and concurring). Our starting point is that the dissemination of obscene material is not constitutionally protected. "This much has been categorically settled by the [Supreme] Court." Miller v. California, 413 U.S: at 23, 93 S.Ct. at 2614. However, the problem which has vexed both courts and legislatures, in the nearly two decades since obscenity was authoritatively constitutionally ostracized, has been what statutory formulation, combined with judicial absolution, will suffice to exorcise pornography without trammelling constitutionally protected expression. As the court in *Miller* described its own forays into the thicket, "Apart from the initial formulation in the Roth case, no majority of the Court has at any given time been able to agree on a standard to determine what constitutes obscene, pornographic material subject to regulation under the States' police power." 413 U.S. at 22, 93 S.Ct. at 2614. Against this jurisprudential backdrop, we are asked to determine whether the New York civil statute must fall because it casts its net too broadly. The standard to be applied is whether "it offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unneces-

---

4. The nature of the right involved has always been of paramount concern in determining whether abstention is appropriate. *See, e. g.*, Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harman v. Forssenius, 380 U.S. 528, 537, 85 S.Ct.

1177, 14 L.Ed.2d 50 (1965); Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

5. See pages 1298–1300.

sarily broadly.' " Zwickler v. Koota, *supra,* 389 U.S. at 250, 88 S.Ct. at 396.

It is clear from the language of the statute that its proscription extends to material proscribed by the criminal statute. The question here is whether the statute applies to material which is not within the Penal Law definition and, thus, not constitutionally subject to suppression.

█ To determine the scope of the statute's prohibition and the meaning to be given its terms, we must turn to the construction given the statute by the New York courts in the past, Miller v. California, *supra,* 413 U.S. at 24, 24 n. 6,

25, 27, 93 S.Ct. 2607, and the interpretations given by those courts to analogous statutes, Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L. Ed.2d 222 (1972).

The present civil statute is derived from and, in its operative language, is nearly identical to § 22–a of the New York Code of Criminal Procedure. That statute was enacted in 1941 together with Penal Law § 1141, (hereinafter " § 1141"), the predecessor of the criminal statute. Ch. 925 (1941), Laws of New York 2116. As enacted, the two statutes incorporated the same operative standard.[6] However, rather than merely

---

6. Section 1 of Chapter 925 enacted Penal Law § 1141 as follows:

§ 1141. Obscene prints and articles. 1. A person who sells, lends, gives away, distributes or shows, or offers to sell, lend, give away, distribute, or show, or has in his possession with intent to sell, lend, distribute or give away, or to show, or advertises in any manner, or who otherwise offers for loan, gift, sale or distribution, any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, paper, picture, drawing, photograph, figure or image, or any written or printed matter of an indecent character; or any article or instrument of indecent or immoral use, or purporting to be for indecent or immoral use or purpose, or who designs, copies, draws, photographs, prints, utters, publishes, or in any manner manufactures, or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, story paper, writing, paper, figure, image, matter, article or thing, or who writes, prints, publishes, or utters, or causes to be written, printed, published, or uttered, any advertisement or notice of any kind, giving information, directly or indirectly, stating or purporting so to do, where, how, of whom, or by what means any, or what purports to be any, obscene, lewd, lascivious, filthy, disgusting or indecent book, picture, writing, paper, figure, image, matter, article or thing, named in this section can be purchased, obtained or had or who has in his possession, any slot machine or other mechanical contrivance with moving pictures of nude or partly denuded female figures which pictures are lewd, obscene, indecent or immoral, or other lewd, obscene, indecent or immoral drawing, image, article or object, or who shows, advertises or exhibits the same, or causes the same to be shown, advertised, or exhibited, or who

buys, owns or holds any such machine with the intent to show, advertise or in any manner exhibit the same; or who, 2. Prints, utters, publishes, sells, lends, gives away, distributes or shows, or has in his possession with intent to sell, lend, give away, distribute or show, or otherwise offers for sale, loan, gift or distribution, any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication, and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime; or who, 3. In any manner, hires, employs, uses or permits any minor or child to do or assist in doing any act or thing mentioned in this section, or any of them, Is guilty of a misdemeanor, and, upon conviction, shall be sentenced to not less than ten days nor more than one year imprisonment or be fined not less than fifty dollars nor more than one thousand dollars or both fine and imprisonment for each offense.

Section 2 of that chapter enacted § 22–a of the Code of Criminal Procedure, in pertinent part, as follows:

§ 22–a. Obscene prints and articles; jurisdiction. The supreme court has jurisdiction to enjoin the sale or distribution of obscene prints and articles, as hereinafter specified:

1. The chief executive officer of any city, town or village in which a person, firm or corporation sells or distributes or is about to sell or distribute or has in his possession with intent to sell or distribute or is about to acquire possession with intent to sell or distribute any book, magazine, pamphlet, story paper, writing, paper, picture, drawing, photograph, figure, image or any written or printed matter of an indecent character, which is obscene, lewd,

restating the standard of § 1141, § 22–a applied to matter described therein or "described in section eleven hundred forty-one of the penal law." Thus, by use of the disjunctive, it would appear by implication that its proscriptions extended beyond those of § 1141. However, in Brown v. Kingsley Books, 1 N.Y.2d 177, 151 N.Y.S.2d 639, 134 N.E.2d 461 (1956), aff'd 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), the New York Court of Appeals rejected such an interpretation and limited the statute's application to obscene matter proscribed under § 1141. The Court stated that

> . . . no injunction may issue under section 22–a except after a full trial of the issues, and only upon a finding that the challenged publication is of the same character as would subject the defendant to punishment under the pertinent provisions of the Penal Law. What the statute does is to provide an additional sanction against the dissemination of obscene matter. 151 N.Y.S.2d at 642–643, 134 N.E.2d at 464.

Had § 1141 remained unchanged, our task here would be at an end. In 1967, however, § 1141 was amended to codify what may be called the *Roth-Memoirs* test. People v. Heller, 352 N.Y.S.2d at 609, 307 N.E.2d at 811. The standard set forth in the civil statute remained unchanged. We must, therefore, examine the New York cases to determine if *Brown's* equation of the scope of the civil and criminal statutes is still valid.

In addition, the Court of Appeals in *Brown* construed the civil statute to proscribe only obscenity. 151 N.Y.S.2d at 639, 134 N.E.2d at 461. *See also* Brown v. Kingsley Books, 354 U.S. 436, 445, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). Our examination of the New York cases indicates that since that time there has been only one definition of obscenity. That definition is the same whether suppression be sought by means of the criminal statute or the civil statute. In either case, obscenity is defined with reference to constitutional requirements as they are embodied in decisions of the United States Supreme Court and in former Penal Law art. 235.

In Larkin v. G. P. Putnam's Sons, 14 N.Y.2d 399, 252 N.Y.S.2d 71, 200 N.E.2d 760 (1964), an action was commenced under the civil injunction statute to suppress *Memoirs of a Woman of Pleasure*, known as *Fanny Hill*. In holding that the book was not enjoinable as obscene, the court stated:

> The suppression of a book requires not only an expression of judgment by the court that it is so bad, in the view of the Judges, that it is offensive to community standards of decency as the Legislature has laid them down, but also that it is so bad that the constitutional freedom to print has been lost because of what the book contains. 252 N.Y.S.2d at 73, 200 N.E.2d at 761.

It is clear from the court's decision that it applied contemporary community standards in determining the appeal and offensiveness of Fanny Hill, *id.* at 73, 74–75, 200 N.E.2d at 761, 762–763 and that it applied the "redeeming social value" test, *id.* at 74, 200 N.E.2d at 763. That is, the tests used were substantially those found in Penal Law art. 235 prior to its 1974 amendment.

In interpreting the civil statute, the Court of Appeals has relied on its

---

lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose; [or which is principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime;] or in any other respect defined in section eleven hundred forty-one of the penal law, may maintain an action for an injunction against such person, firm or corporation in the supreme court to prevent the sale or further sale or the distribution or further distribution or the acquisition of [sic] possession of any book, magazine, pamphlet, story paper, writing, paper, picture, drawing, photograph, figure or image or any written or printed matter of an indecent character, herein described or described in section eleven hundred forty-one of the penal law.

Bracketed portion was deleted by a 1954 amendment of the Statute. Ch. 702, § 1, (1954) Laws of New York 1635.

precedents under the older penal statute and the United States Supreme Court cases embodying the standards for determining obscenity. *See, e.g.,* Larkin v. G. P. Putnam's Sons, *supra*; Larkin v. G. I. Distributors, 14 N.Y.2d 869, 252 N.Y.S.2d 81, 200 N.E.2d 768 (1964), aff'g 41 Misc.2d 165, 245 N.Y.S.2d 553 (Sup. Ct.1961). The Court of Appeals has adopted the definition of obscenity formulated in People v. Richmond County News, Inc., 9 N.Y.2d 578, 216 N.Y.S.2d 369, 175 N.E.2d 681 (1961). Our reading of that case convinces us that the definition of obscenity there established is equivalent to that codified in Penal Law art. 235. The elements of the definition are whether, to the average person, applying contemporary standards, the dominant theme of the material as a whole appeals to the prurient interest, 216 N.Y.S.2d at 375, 175 N.E.2d at 685, portraying sex in a patently offensive manner, *id.* at 376, 175 N.E.2d at 686, and totally lacking in social value, *id.* at 372, 375–376, 175 N.E.2d at 685–686. In shorthand form, what is obscene is "hard-core pornography." *Id.* at 375, 175 N.E.2d at 685.

In People v. Heller, *supra*, the Court of Appeals construed the definition of obscenity contained in Penal Law art. 235 as applying to what it termed "hard core pornography" and stated that this "hard core pornography test" has been consistently applied both under that statute and its predecessor Penal Law § 1141. 352 N.Y.S.2d at 612, 307 N.E.2d at 813. Thus, the Court of Appeals has authoritatively construed prior New York case law as embodying the constitutionally sufficient definition of obscenity subsequently codified in the criminal statute.

■ Since New York's highest court has construed its decisions under Penal Law § 1141 as applying a definition of obscenity equivalent to that contained in Penal Law art. 235, prior to the 1974 amendment, and since our reading of the New York cases convinces us that that definition of obscenity has been consistently applied in proceedings pursuant to the civil statute, we conclude that the construction given the civil statute in *Brown* is still valid. That is, what may be enjoined pursuant to the civil statute is only that which would subject one to prosecution under the criminal statute. As so construed, the civil statute is not unnecessarily broad.

### Vagueness

Having concluded that what is enjoinable as obscenity under the civil statute is the same as what is obscene under the criminal statute, our task here is greatly simplified.

Penal Law art. 235 as amended effective September 1, 1974 is a legislative codification of the standards for determining obscenity established in *Miller*, including the *Miller* examples of specific hard-core sexual conduct which a state statute could constitutionally proscribe. This statute, then, cannot be condemned as unconstitutionally vague.

As the definition of obscenity for purposes of the civil statute is the same as that for the criminal statute, the civil statute is, likewise, not unconstitutionally vague. We are fortified in this conclusion by the New York Court of Appeals' decision in People v. Heller, *supra*. There, the court said that what was hard-core pornography under both Penal Law § 1141 and Penal Law art. 235 was

"[p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated [and/or] Patently [sic] offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." (413 U.S. at p. 25, 93 S.Ct. at p. 2615). 352 N.Y.S.2d at 612, 307 N.E.2d at 813.

Nor is the community with reference to which prurient appeal and patent offensiveness is to be determined vague. The Court of Appeals in *Heller* has authoritatively established a statewide community as the standard.

■ For all the foregoing reasons, we hold that the New York civil statute

is not on its face so unconstitutionally vague and overbroad that it cannot be enforced. This is not to say that the statute may not hereafter be applied or construed in an unconstitutional manner. When such a case presents itself, we stand ready to protect the first amendment rights involved. All that the instant case requires us to hold is that the statute, as it has been construed, is not constitutionally void on its face.

Accordingly, the complaint is dismissed.

Settle order on notice.

OAKES, Circuit Judge (dissenting):

In this wonderful branch of the law, under Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Supreme Court (or a five-man majority thereof) is the ultimate censoring body having to decide what is appealing "to the prurient interest" of the average person applying contemporary standards and what is a "patently offensive 'hard core'" depiction of sexual conduct. *Compare* Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 640 (1974), with Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). An inferior federal judge is bound to follow the *Miller*

"standards," so-called, no matter how much he may think they are simply a verbal reformulation of the proposition that five judges can ultimately prescribe what the rest of the adult public, paying its own money, can read, see, listen to or otherwise take in through its senses.[1] *See* Brennan, J., dissenting in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 92, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

As such I am required to agree that N.Y. Penal Law § 235.00, as amended effective September 1, 1974, N.Y. Laws 1974, ch. 989 (McKinney's Session Laws 1974), read in the light of that rather remarkable piece of judicial legislation, People v. Heller, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973) (4–3 decision), cert. denied sub nom., Buckley v. New York, 418 U.S. 944, 94 S.Ct. 3231, 41 L.Ed.2d 1175 (1974) (5–4 decision), may stand under *Miller*. Thus, as Judge Gabrielli for the *Heller* majority declared, 352 N.Y.S.2d at 613, 307 N.E.2d at 813, "the average man, whether he be the smut peddler or the policeman," —he does not mention the newstand operator or the movie exhibitor—knows precisely what to sell or prosecute as the case may be (at least until the next magazine or movie comes along).

---

1. While the formulation set forth in *Miller* attempts to produce specificity and predictability, the writer is one of those who thinks achieving either not only improbable but also almost totally subjective. As Professor Emerson says of the "hard core" pornography test, now adopted by *Miller*:

 Vagueness and uncertainty are by no means eliminated. Even if the hard-core pornography test allows more specific description of the materials proscribed, the court must still decide by what standards certain types of material are to be included or excluded. Furthermore, the terms used are not so precise as they may seem on first impression. Like the *Roth* [v. United States, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed. 2d 1498] (1957)] test, the hard-core pornography test does not really intend to exclude all the material which satisfies the description. Ancient pottery, or a picture by a famous artist, are not meant to be covered. The failure to achieve precision

is well illustrated by the *Mishkin* [v. New York, 383 U.S. 502 [86 S.Ct. 958, 16 L.Ed. 2d 56] (1966)] case, in which the New York Court of Appeals found material to be hard-core pornography but Justice Stewart, patron saint of the hard-core pornography test, judged it otherwise.

. . . . .

Taking the requirement of artistic merit and the absence of commercial exploitation together, the hard-core pornography test is, like the *Roth* test, a way of allowing high-class, elegantly packaged pornography, while denying pornography to the less affluent, educated, or supposedly intelligent. Also like the *Roth* test, it does not rest on any demonstrable relation to the effect of the material in causing social harm or on any serious effort to conform to the requirements of a system of freedom of expression. T. Emerson, The System of Freedom of Expression 491–92 (1970).

**1302**

The question before us in this three-judge court case is, then, whether the obscenity injunction statute, C.P.L.R. § 6330, is the verbal and substantive equivalent, or civil alter ego, of the new § 235.00 of the Penal Law. The Appellate Division, First Department, before People v. Heller, *supra*, engaged in exactly the same kind of judicial legislation as did the majority in *Heller* by construing the standards of *Miller* into C.P.L.R. § 6330. The Appellate Division put it nicely and neatly with a wave of the judicial wand, *viz.*, "that the New York courts should synthesize by judicial construction the requirements of the Miller standards into CPLR 6330 . . . ." Redlich v. Capri Cinema, Inc., 43 A.D.2d 27, 349 N.Y.S.2d 697, 700 (App.Div.1973). So despite the fact that § 6330 says one thing (permitting the enjoining of, *e. g.*, an "obscene, lewd, lascivious, filthy, indecent or disgusting" book, etc., something which is insufficiently specific under *Miller* or any non-obscenity canon of constitutional law), § 6330 has been held by the Appellate Division to permit only the enjoining of the very "narrow" class of materials that

fall within the *Miller* standards, so-called. In the light of the Court of Appeals' own legal prestidigitation in *Heller* one would doubt whether it would look askance at the Appellate Division's in *Capri Cinema,* especially in the light of its own Brown v. Kingsley Books, Inc., 1 N.Y.2d 177, 151 N.Y.S.2d 639, 134 N.E. 2d 461 (1956), aff'd, 354 U.S. 436, 77 S. Ct. 1325, 1 L.Ed.2d 1469 (1957).[2]

But when *Brown* equated the penal and injunction statutes, they both contained the same language. *See* Winters v. New York, 333 U.S. 507, 511 n.2, 68 S.Ct. 665, 92 L.Ed. 840 (1948). Massachusetts has refused to say, in Justice Kaplan's happy turn of phrase, "that the tired words of our statute . . . have the magical property of instantly conforming their meaning to the hypothesized statute . . . ." Commonwealth v. Horton, Mass., 310 N.E.2d 316, 325 (1974) (Kaplan, J., concurring). And the New York Court of Appeals has not yet pulled the § 6330 rabbit out of its legal hat. The facts that the composition of that great court has materially changed since it decided the 4–3 People

---

2. The majority here takes the view that the Court of Appeals' holding in People v. Richmond County News, Inc., 9 N.Y.2d 578, 216 N.Y.S.2d 369, 175 N.E.2d 681 (1961), that the April, 1957, issue of the magazine "Gent" was not "hardcore pornography" and therefore not within the prohibition of old § 1141 of the Penal Law leads to the conclusion that C.P.L.R. § 6330 and new § 235.00 of the Penal Law adopt an equivalent definition of obscenity. The majority sees *Richmond County News* as having construed § 1141 as § 235.00 is now written and construed in light of *Miller.* While the Supreme Court might be surprised to learn that *Miller* was anticipated by the New York Court of Appeals in 1961, the *Richmond County News* case is just another example of how impossible · it is to define even "hard core pornography" except in terms that are subjective to the reader (and therefore indefinite) :

  Under our statute, section 1141 of the Penal Law, the test of the obscene, of the pornographic, is not in the tendency or appeal of the material, but rather in its content objectively appraised. See Lockhart and McClure, Censorship of Obscenity :

The Developing Constitutional Standards, 45 Minn.L.Rev. 5, 58–68. It focuses predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification. Recognizable "by the insult it offers, invariably, to sex, and to the human spirit" (D. H. Lawrence, Pornography and Obscenity [1930], p. 12), it is to be differentiated from the bawdy and the ribald. Depicting dirt for dirt's sake, the obscene is the vile, rather than the coarse, the blow to sense, not merely to sensibility. It smacks, at times, of fantasy and unreality, of sexual perversion and sickness and represents, according to one thoughtful scholar, "a debauchery of the sexual faculty". Murray, Literature and Censorship, 14 Books on Trial 393, 394 ; see, also, Lockhart and McClure, Censorship of Obscenity : The Developing Constitutional Standards, 45 Minn.L.Rev. 5, 65.

*Id.* at 376, 175 N.E.2d at 686. With all respect to my brethren I fail to see how *Richmond County News* equates with *Miller,* even if *Miller* does not give us its definition of "hard core."

v. Heller case on remand from the Supreme Court, and that in this field of law the verities of one year are apt to be the fallacies of the next, impel me to consider the civil statute to mean what it says. I say this having in mind that the predecessor machinery of C.P.L.R. § 6330 was upheld in the United States Supreme Court only by a 5–4 vote. Brown v. Kingsley Books, Inc., *supra*.[3] I say this also having in mind the Appellate Division's plainly wrong statement that § 6330 is to be "liberally" construed, 349 N.Y.S.2d at 701. If the statute were liberally or broadly construed (in the sense of what could be enjoined) it would obviously fail. I interpret the Appellate Division to have meant that the statute will be "liberally" construed to effectuate the "strict" *Miller* construction, that is, the words will be said to mean something they do not mean in order to narrow and hopefully to validate the statute.

My view, which does not go out of its way to legislate for the State of New York, is based, I might add, not so much on a concern for the film operators or magazine sellers, since the commercial purveyors can, as a calculated risk of doing business, devise borderline material that will keep the courts full and busy for years; I am much more concerned with what I have referred to elsewhere as the "freedom of reception" for adult Americans, regardless of taste. *See* United States v. Cangiano, 491 F.2d 906, 915 (2d Cir. 1973) (dissenting opinion), petition for cert. filed, 43 U.S.L.W. 3002 (U.S.Apr. 11, 1974) (No. 73–1526). See also Salem Inn, Inc. v. Frank, 501 F.2d 18, 21 nn.3 and 4 (2d Cir. 1974).

I therefore dissent.

3. With the new emphasis on community standards in *Miller*, Mr. Justice Brennan's dissent in Brown v. Kingsley Books, Inc., that community standards can be determined only by a jury, 354 U.S. at 448, 77 S.Ct. 1325, becomes more persuasive. Thus it is not beyond the realm of the possible that the Supreme Court would reexamine *Brown* in the light of *Miller*.